LEVI LUPTON AND ISAAC LUPTON v. JARED FREEMAN.

*Contract—Performance—Payment.*

Defendant let a logging contract to plaintiffs, and, after part performance by them, an agreement was made by which they surrendered the contract, and were to receive a certain sum per thousand feet for all logs cut and skidded, a certain portion of which was to be evidenced by an order drawn on the owners of the timber, payable when defendant had shipped the logs out, which he agreed to do as fast as he could secure trains for that purpose. Defendant took possession of the job, and gave plaintiffs the order agreed upon, who received from the owners of the timber a receipt, in which they agreed to retain the amount called for from the amount due defendant when the logs were shipped to them by him, according to their contract with defendant, and when collected to pay it to plaintiffs. Defendant shipped out a portion of the logs, and the remainder were destroyed by fire. And it is held that the giving of the order was not payment, but a mode or provision for payment, depending upon defendant's own act in shipping out the logs; and that he cannot set up his default in thus providing the means for the payment of the order, nor the unforeseen destruction of the logs, and his consequent inability to perform the contract, as a defense to an action by plaintiffs to recover the amount their due.

Error to Ogemaw. (Simpson, J.) Argued October 8, 1890. Decided October 31, 1890.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*Trask & Smith,* for appellant, contended:

1. The court erred in submitting to the jury the question whether the logs were all shipped out or not, as it was conceded by the pleadings and in the testimony that a portion were burned; citing *Gavigan v. Evans,* 45 Mich. 597; *Lange v. Perley,* 47 Id. 352; *Medina v. Perkins,* 48 Id. 67; *Seligman v. Ten Eyck,* 49 Id. 105; *Stearns v. Vincent,* 50 Id. 209.

2. The necessary understanding on the part of the jury must have been from the language of the charge that it was optional with Sage & Co. to pay the order or not, and this was error.

3. In brief, the defendant's position is this:

*a*—All of the work was done under a special contract, set forth in the record.

*b*—Plaintiffs' rights under that contract, together with their camps, were sold to defendant by the contract of January 13, 1888.

*c*—Defendant paid the amount agreed to be paid in cash, and gave the agreed order on Sage & Co.

*d*—The only breach of contract assigned is defendant's failure to get trains as fast as he could to ship out the logs, and this allegation is negatived by the evidence.

4. The order relied on is not admissible under the common counts, because not payable unconditionally; citing *Butterfield v. Seligman*, 17 Mich. 95; *Maynard v. Tidball*, 2 Wis. 34; *Meyers v. Phillips*, 72 Ill. 460.

*Markey & Hall*, for plaintiffs, contended:

1. The law is well settled that when a drawee does not accept the order, or accepts it conditionally, and the conditions are not complied with, he is not bound; citing *Tabor v. Van Vranken*, 39 Mich. 793.

2. Plaintiffs can recover on the common counts; citing *Moon v. Harder*, 38 Mich. 566; *Bush v. Brooks*, 70 Id. 446; and a like recovery can be had on a conditional note; citing *Rickey v. Morrison*, 69 Mich. 139.

CHAMPLIN, C. J. In 1887, Sage & Co., of West Bay City, were the owners of a tract of pine land in sections 27 and 28, in township 25 N., range 4 E.

The defendant, Jared Freeman, had entered into a contract with the company to cut, haul, and deliver such pine logs to Sage & Co., at West Bay City, and on October 27, 1887, Freeman entered into a contract with the plaintiffs, under the firm name of Lupton Bros., by which they agreed to cut, draw, and deliver on the cars of the Detroit, Bay City & Alpena Railroad Company, in section 27 aforesaid, all the pine timber suitable for saw-logs on sections 27 and 28; also, that they would cut and skid

certain of the logs along the railroad line on or near the Sage & Co. survey the then coming winter; that they would mark the logs with Sage & Co.'s mark, and would complete the job on or before July 1, 1889. Freeman agreed to pay Lupton Bros. for their work $1.50 a thousand as the logs were cut and skidded on the railroad, and the balance as the logs were shipped out. Freeman also agreed to furnish banking ground as convenient as might be on the survey before that time made by Sage & Co., with the privilege of making some slight changes. The survey mentioned was a branch railroad running from the Detroit, Bay City & Alpena Railroad to this land for the purpose of transporting the logs out.

Under this contract Lupton Bros. skidded along the surveyed line 1,913,824 feet of logs. At this time the railroad was completed to within one and a half miles. Freeman failed to pay promptly according to the contract, and on account of such difficulty Lupton Bros. sold out to Freeman their interest in the contract under the following agreement:

"Town 25—4, Jan. 13, 1888.

"Lupton Brothers agree to sell out to Freeman the lumber job they contracted with him for October 27, '87, giving him possession when called for on or before Jan. 20, 1888, for which Freeman is to pay them sufficient, with what has been paid, to make twelve shillings per thousand, in cash, or paying their men, on or before Feb. 5, 1888, for all logs skidded on R. R. line up to the time he takes the job. Lupton Brothers agree at same time to give Freeman all the camps on said land complete, built and owned by them, for which they have already been paid two hundred and fifty dollars, Freeman agreeing to pay them fifty dollars more in same manner above stated. Freeman further agrees that he will, on the delivery of the above job, give Lupton Brothers an order on Sage & Co. for such an amount as will be forty cents per thousand for all logs they have skidded on R. R. when he takes the job, payable when he has shipped said logs out, and that he will ship said logs out as fast

as he can get trains, and will at same time give an order for any portion of the twelve shillings per thousand then unpaid that is not due the men, due Feb. 1, 1888.

"LUPTON BROTHERS.
"JARED FREEMAN."

The only controversy in this case arises over the terms of the contract by which Freeman agreed to pay Lupton Bros. 40 cents a thousand feet. Freeman took possession of the camp and outfit on January 24, 1888, and gave to Lupton Bros. an order bearing that date, which reads as follows:

"$765.52.            FREEMAN'S CAMP, January 24, 1888.
"H. W. SAGE & CO.:
"Please pay Lupton Bros. seven hundred sixty-five dollars and fifty-two cents, when I have shipped the logs out that they have skidded on line R. R. on sec. 27, T. 25-4, being 1,913,824 feet as per your scale.
"JARED FREEMAN."

Lupton Bros. presented this order to H. W. Sage & Co., when they made out and presented to Lupton Bros. the following paper:

"WEST BAY CITY, February 1, 1888.
"We have received from Lupton Bros. an order in their favor by J. Freeman, for $765.52, payable according to its terms when certain 1,913 thousand feet of logs now on skids along the railroad line in 25-4 east are shipped here; which amount we will retain from Freeman when said logs are shipped by him, according to his contract with us, and when so collected to pay to said Lupton Brothers or their order.
"H. W. SAGE & COMPANY,
"Pierson."

Freeman shipped out the logs during the summer of 1888, except about 800,000 feet, which were destroyed by a forest fire. Lupton Bros. requested payment of the order by H. W. Sage & Co., and they refused, for the reason that they had no money belonging to Freeman out

82 MICH.—41.

of which to pay it. They demanded payment of Freeman, and he denied any liability to Lupton Bros. The declaration contained a special count based upon the dealings between Lupton Bros. and Freeman, and the contract of January 13, 1888. It also contains the common counts in *assumpsit*, under which they claim in a bill of particulars for work and labor in cutting, hauling, and skidding the logs above mentioned, at 40 cents a thousand feet, amounting to $765.52. The defendant pleaded the general issue, and gave notice that the logs referred to in plaintiffs' declaration were, without fault or neglect of the defendant, destroyed by fire before the same could be loaded onto cars or shipped to H. W. Sage & Co.

It appears that the contract of January 13, 1888, was fully executed upon plaintiffs' part, and that it was executory on the part of defendant. It was a purchase of certain camps, and an agreement to pay Lupton Bros. for cutting, hauling, and skidding the logs. The time and manner of payment were expressed in the contract. Lupton Bros. did not assume the risk of the logs being consumed by fire. Freeman owed them for work and labor already performed upon the logs. He had not paid them, and they made a new agreement, by which Lupton Bros. were released from further performance, and Freeman was to pay for what had been done. The giving of the order upon Sage & Co. was not payment, but a mode or provision for payment, and it depended upon his own act in shipping out the logs. Freeman cannot set up his own default in providing the means for Sage & Co. to pay the order as a defense to the claim of Lupton Bros. Nor can he set up the unforeseen destruction of the logs, and his consequent inability to perform the contract, as a defense. The risk was his, and he must bear the loss. By his own contract he created a duty or

charge upon himself, and he must make good his promise to pay his debt to Lupton Bros. It is not a case where his performance is excused by act of God.

There was no assent by Sage & Co. to the contract between Lupton Bros. and Freeman which bound them in any manner to pay Lupton Bros., and Lupton Bros. could have maintained no action against them. No time was stated when Freeman should complete the shipping out of the logs. He was to do it as fast as he could get trains. He had shipped a portion, and the rest were consumed by fire. The law implied a duty and a promise to pay for the labor in cutting and skidding the logs consumed in a reasonable time. That time had elapsed before the commencement of suit. Under the undisputed facts, and the law applicable thereto, the plaintiffs were entitled to recover, and the errors pointed out in the charge of the court were errors without prejudice.

The judgment is affirmed.

MORSE, CAHILL, and LONG, JJ., concurred. GRANT, J., did not sit.